**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ATLEISURE, LLC | ) | |
| | ) | |
| Plaintiff. | ) | Civil Action No. 1:20-cv-04662-TWT |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| SUNVILLA CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SUNVILLA CORPORATION'S**
**<u>REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

I.    The Evidence is Clear that the '492 Patent is Co-Owned by
      Atleisure and Yada Technology's Successor in Interest .......................... 1

II.   Dismissal is Mandatory because a Co-owner of the '492 Patent
      Has Not Been Joined ................................................................. 7

III.  Rule 19 Analysis also Requires Dismissal ............................................ 12

IV.   Conclusion ............................................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Advanced Video Techs. LLC v. HTC Corp.*,
879 F.3d 1314 (Fed. Cir. 2018) ................................................................ 8, 12

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................ 9

*AntennaSys, Inc. v AQUYR Techs., Inc.*,
976 F.3d 1374 (Fed. Cir. 2020) ...................................................................... 8

*Bushnell, Inc. v. Brunton Company*,
659 F. Supp. 2d 1150 (D. Kan. 2009) ......................................................... 12

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*,
142 F.3d 1266 (Fed. Cir. 1998) ............................................................. 11, 12

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
517 F.3d 1284 (Fed.Cir.2008) ........................................................... 8, 10, 12

*Enovsys LLC v. Nextel Comms., Inc.*,
614 F.3d 1333 (Fed. Cir. 2010) ................................................................ 8, 12

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed.Cir.1998) ................................................. 8, 9, 10, 11, 12

*Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*,
859 F.3d 1306 (11th Cir. 2017) .................................................................... 13

*Immunex Corp. v. Sandoz Inc.*,
964 F.3d 1049 (Fed. Cir. 2020) ...................................................................... 7

*Israel Bio–Eng'g Project v. Amgen, Inc.*,
475 F.3d 1256 (Fed. Cir. 2007) ......................................................... 8, 10, 12

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
   925 F.3d 1225 (Fed. Cir. 2019) ............................................................. 10, 11

*Schering Corp. v. Roussel-UCLAF SA*,
   104 F.3d 341 (Fed. Cir. 1997). ................................................................... 10

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
   427 F.3d 971 (Fed. Cir. 2005). ................................................................... 15

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) .............................................................. 8, 12

*SourceOne Glob. Ptnrs., LLC v. KGK Synergize, Inc.*,
   2009 U.S. Dist. LEXIS 56061 (N.D. Ill. June 29, 2009) ............................. 12

*STC.UNM v. Intel Corp.*,
   754 F.3d 940 (Fed. Cir. 2014) ............................................................. passim

*STC.UNM v. Intel Corp.*,
   767 F.3d 1351 (Fed. Cir. 2014) ........................................................ 8, 10, 12

*Synopsys, Inc. v. Magma Design Automation, Inc.*,
   2006 U.S. Dist. LEXIS 21662 (N.D. Cal. Mar. 30, 2006) .......................... 12

*Thermoset Corp. v. Bldg. Mat'ls Corp. of Am.*,
   849 F.3d 1313 (11th Cir. 2017). ................................................................ 14

**Statutes**

35 U.S.C. § 262 ............................................................................................... 9

**Rules**

FED. R. CIV. P. 19 .............................................................. 9, 10, 11, 12, 13, 14

In its opening brief, Sunvilla demonstrated why Atleisure's claim should be dismissed due to lack of statutory standing under the Patent Act. Atleisure makes clear in its Opposition (Opp.) that Atleisure (1) does not dispute any of the facts relied on in Sunvilla's Motion; (2) does not dispute the accuracy of the '492 patent assignment and/or contractual documents supporting Sunvilla's Motion; (3) does not contend that any discovery is required to resolve the standing issue or that Atleisure requires additional time to collect evidence; and (4) does not request permission to replead the allegations in its Complaint should dismissal be warranted.

The briefing and evidence before this Court show that the question of standing is solely a legal one, and that it is ripe for adjudication. Because Atleisure has failed to carry its burden to show statutory standing to sue for Sunvilla's alleged infringement of the '492 patent, Sunvilla's Motion to Dismiss should be granted and this case dismissed.

## I.   The Evidence is Clear that the '492 Patent is Co-Owned by Atleisure and Yada Technology's Successor in Interest

It is undisputed that Atleisure, Yada Technology, and Southern Sales executed multiple, legally operative documents investing the rights in and to the '492 patent jointly in Yada Technology and Atleisure.

The **first document** – a Letter of Intent (LOI) – provided that Yada

Technology and Atleisure would purchase all of the assets of Southern Sales. (Dkt. 20-2.) Thus, under the LOI, all assets – including the '492 patent – were intended by all parties to be acquired and co-owned by Yada Technology and Atleisure. The **second document** was a license granted by Southern Sales jointly to Yada Technology and Atleisure as co-licensees to, *inter alia*, the '492 patent. (Dkt. 20-3.) Under the license, all parties once again expressed and memorialized their intention that Yada Technology and Atleisure possess joint rights in and to the '492 patent for the license's effective period. In the **third document**, Southern Sales assigned the '492 patent jointly to Yada Technology and Atleisure as co-owners. (Dkt. 20-4.) Yada Technology and Atleisure were expressly named in the assignment as "assignees," again reflecting the parties' intentions that Yada Technology and Atleisure jointly own the '492 patent. The **fourth document** – an "Asset Purchase Agreement" (APA) – purportedly specified both Atleisure and Yada Technology as purchasers and assignees of the assets of Southern Sales, including the '492 patent. (Dkt. 20-1, Browne Decl., ¶ 7.)[1]

Indeed, Atleisure's Opposition concedes that the '492 patent was jointly assigned to both Atleisure and Yada Technology, and that Atleisure and Yada

---

[1] Sunvilla notes that Atleisure has failed to produce the APA to either the Court or Sunvilla.

Technology jointly own the '492 patent. For instance, Atleisure makes clear that "[o]n May 24, 2012, ATLeisure and Yada Technology . . . exercised an option to purchase a group of patents and trademarks for Southern Sales' umbrella business – including the '492 patent." (Opp. at 2-3.) Yet further, Atleisure admits that "the assignment agreement listed both ATLeisure and Yada Technology[.]" (*Id.* at 3.)

Not only did the LOI, the APA, the license, and the assignment all provide for joint ownership by Atleisure and Yada Technology (and/or its successor), the assignment to both Atleisure and Yada Technology also jointly grants to them (1) the right to initiate suit for infringement of the '492 patent and (2) the right to collect "all income, royalties, damages, and payments" based on the transferred intellectual property, including the '492 patent. (Dkt. 20-4, §§ 2(e)-(f).) Importantly, a conflicting assignment (*see* Dkt. 20-5) to Atleisure of the *same date* (and relied on by Atleisure for standing) does not contain these two express assignments of patent rights that were included in the joint assignment to Atleisure and Yada Technology. In fact, Atleisure has wholly failed to explain why two assignments as to the '492 patent – executed on the same day – exist. Yet further, and perhaps most fatal to Atleisure's position, it has also failed to establish why one assignment (the one on which Atleisure wishes to rely) controls over the other assignment that is in direct

conflict. (*Compare* Dkt. 20-4, *with*, Dkt. 20-5.)

Notwithstanding the explicit recitals of a joint interest conveyed to Yada Technology and Atleisure in the LOI, APA, license, and assignment, Atleisure places much weight on the declaration of William Browne, its President, which purports to divine the intentions of four different entities: Atleisure, Southern Sales, Yada Technology, and Wu Wei Dan. Of course, Mr. Browne's declaration is nothing short of speculation and conjecture, especially considering that Mr. Browne's statements—regarding third-party entities—are subjective, self-serving, and inadmissible. Notwithstanding the foregoing, Sunvilla does highlight one statement by Mr. Browne—his admission that "[t]he APA, the license and the assignment agreement listed **both** *ATLeisure* and *Yada Technology* as purchasers and assignees.*" (Dkt. 20-1, ¶ 7 (emphasis added).)

While Atleisure freely provides unsupported, unverified, and self-serving statements by its President, it fails to provide any declaration or evidence from any of the *other* contracting parties, including Southern Sales, Yada Technology, or Mr. Wu Wei Dan. Instead, Atleisure relies on Mr. Browne's declaration to explain what was purportedly intended by the parties to the various legal documents. This approach is improper, not to mention that it begs the question of what evidence or explanation, if any, the other parties to the agreements may have, which Atleisure has failed to provide. In fact, Mr.

4

Browne's declaration appears to be nothing more than a thinly veiled attempt to rewrite the legal documents surrounding a seven-figure business deal that closed nine years ago. Atleisure's efforts to use the testimony of a single, financially interested witness to undo the effects of a complex business deal, by and among four different parties, are inappropriate and legally ineffectual.[2]

Atleisure next contends that (1) because Yada Technology has dissolved (this assertion being supported only by one sentence in the Browne declaration), Atleisure should be permitted to sue for infringement without joining the '492 patent co-owner, and (2) Yada Technology's ownership of the '492 patent was somehow voided in the 2020 distribution of Yada Technology's assets in bankruptcy. Neither assertion survives even the mildest scrutiny.

There is no evidence that Yada Technology's ownership interest in the '492 patent disappeared or was otherwise nullified in any bankruptcy proceedings. Rather – even assuming *arguendo* the truth of Atleisure's evidence – Yada Technology's co-ownership rights in and to the '492 patent were conveyed to a third party pursuant to Yada Technology's bankruptcy

---

[2] The Membership Unit Assignment (Dkt. 20-6) also fails to transfer ownership of the '492 patent, as discussed in Sunvilla's opening brief. (Op. Br. at 9-11.) The co-ownership of the '492 patent is not a legal claim or chose in action that can be "released" but is an independent property right that must be conveyed/assigned. Further, that document does not even identify the '492 patent, nor does it "release" any rights in the '492 patent (or any other patent).

distribution plan. (*See* Dkt. 20-7.) Indeed, the Civil Order from the Chinese bankruptcy proceeding—presented by Atleisure in support of its Opposition—*twice* references a "final distribution of Yada Technology's assets," stating that "the final distribution has been completed." (*Id.*)

Atleisure's own evidence thus shows that as of June 28, 2020, Yada Technology's assets, including the rights in and to the '492 patent, were distributed to a third party. Notably, there is no recital or statement in the Yada Technology bankruptcy certificate that Yada Technology's assets were somehow nullified or destroyed. Rather, Yada Technology's '492 patent co-ownership rights (and its other assets) were simply transferred by the final distribution of Yada Technology's estate to some acquiring party who is now the co-owner. And because ownership of the '492 patent was conveyed to a third party pursuant to the bankruptcy distribution plan, Yada Technology's current corporate status is not relevant.

Atleisure's President, Mr. Browne, does not address the distribution of Yada Technology's assets under the bankruptcy order, including whether Atleisure is aware of the identity of the entity that acquired Yada Technology's assets. However, these omissions and any resulting problems therefrom – that of identifying, locating, and persuading the current co-owner of the '492 patent to join this suit as party plaintiff – were not created and need not be solved by

6

Sunvilla. Notably, it was Atleisure who was a party to the several legal documents by which Yada Technology was granted co-ownership rights in and to the '492 patent, and it was Atleisure who could have objected to the arrangement had it wanted to avoid the inconveniences of patent co-ownership. But Atleisure did not object to the co-ownership arrangement; rather, Atleisure, on numerous occasions, expressed its consent as to patent co-ownership because it likely bore the most potential monetary gain. In any event, Atleisure cannot now re-trade that deal after accepting its benefits, especially when Atleisure's rewrite or self-serving cancellation of the prior legal agreements now places Sunvilla at risk of multiple, inconsistent judgments. *See Immunex Corp. v. Sandoz Inc.,* 964 F.3d 1049, 1059 (Fed. Cir. 2020) ("A key purpose of Section 281 is 'preventing harassment through multiple infringement suits by different assignees asserting essentially the same patented invention."').

## II.      Dismissal is Mandatory because a Co-owner of the '492 Patent Has Not Been Joined

Atleisure asserts that this Court must apply a Rule 19 analysis before granting dismissal. Atleisure's contention, however, ignores controlling appellate case law and erroneously conflates (1) a suit by one but not all patent co-owners, and (2) a suit by a licensee without the patent owner/licensor. Under

the first scenario, dismissal is mandatory, and Rule 19 inapplicable; under the second scenario, Rule 19 may apply. The instant case presents only facts applicable to the first scenario—that of patent co-owners—since Atleisure has abandoned its prior claim of standing as a licensee. In sum, Atleisure's positions and cited case law apply only under the second scenario, which are inapplicable here.

Black letter law—including Federal Circuit precedent that has been handed down repeatedly since 1998—confirms that all co-owners of a patent must voluntarily join a suit for infringement, and that failure of any co-owner to so join mandates dismissal of the suit. *AntennaSys, Inc. v AQUYR Techs., Inc.*, 976 F.3d 1374, 1378 (Fed. Cir. 2020); *Advanced Video Techs. LLC v. HTC Corp.*, 879 F.3d 1314, 1318-19 & n.4 (Fed. Cir. 2018); *STC.UNM v. Intel Corp.*, 754 F.3d 940, 945-47 (Fed. Cir. 2014), *reh'g en banc denied* 767 F.3d 1351 (Fed. Cir. 2014); *Enovsys LLC v. Nextel Comms., Inc.*, 614 F.3d 1333, 1341 (Fed. Cir. 2010); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1325 (Fed. Cir. 2010); *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1289 & n. 2 (Fed.Cir.2008); *Israel Bio–Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264–65 (Fed. Cir. 2007); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed.Cir.1998), *cert. denied*, 525 U.S. 923 (1998).

The Federal Circuit decision in *Ethicon* explained that this rule—

requiring dismissal of a case brought without voluntary joinder of all co-owners—derives from the unique status of patent co-owners set forth in Section 262 of the Patent Act, which gives each joint owner the right to practice the invention without the consent of the other. 135 F.3d at 468; *see also* 35 U.S.C. § 262. In *STC.UNM*, the Federal Circuit confirmed that the ability of a patent co-owner to impede an infringement suit brought by another co-owner derives from substantive patent law. 754 F.3d at 946. And this substantive co-owner right not to join an infringement suit "trumps the procedural mechanism of mandatory joinder under Rule 19(a)." *Id.*; *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ("[R]ules of procedure 'shall not abridge, enlarge or modify any substantive right.'").

Indeed, the argument Atleisure makes now – that joinder of an absent **patent co-owner** should be analyzed under Rule 19 – was the same theory argued by the patent holder – and explicitly rejected – in the *STC.UNM* case:

> STC is incorrect in arguing that Rule 19 trumps the holding that substantive patent law ordinarily requires consent to joinder from all co-owners…
>
> …
>
> Rules of procedure, such as that in Rule 19(a), must give way to substantive patent rights. To remove any doubt, **this court holds that the right of a patent co-owner to impede an infringement suit brought by another co-owner is a substantive right that trumps the procedural rule for**

**involuntary joinder under Rule 19(a)**.

*STC.UNM*, 754 F.3d at 945-46 (internal quotation marks and citations omitted, emphasis added); *accord DDB Techs.,* 517 F.3d at 1289 n.2 ("[W]e have explicitly held that Rule 19 does not permit the involuntary joinder of a patent co-owner in an infringement suit brought by another co-owner.").

Atleisure's invitation to employ a Rule 19 analysis to cure its standing defect was not only rejected by the panel majority in *STC.UNM*, but the patent holder's attempt to obtain an *en banc* rehearing on the same point was denied. Judge Dyk's opinion concurring in denial of the *en banc* rehearing petition is instructive:

> This court has consistently recognized that the substantive right to enforce the patent does not belong unilaterally to each co-owner, but requires all of the co-owners' agreement, **so that each co-owner has a substantive right not to be involuntarily joined in a patent infringement suit without such agreement.**

767 F.3d at 1353 (Dyk, J., concurring in denial of rehearing *en banc*) (citing *Ethicon*, *DDB Techs*., *Israel Bio–Eng'g Project*, *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997), and other cases) (emphasis added).

Atleisure's citation to *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225 (Fed. Cir. 2019) does not help its cause. As discussed above, the standing analysis for suit by a **licensee** differs from that for suit by

a **patent co-owner** (the latter being the situation here). *Lone Star* involved the former situation, a suit by a party who received a transfer of "less than all substantial rights in the asserted patent," or, in other words, a license. 925 F.3d at 1225-38 ("We turn next to whether the 'totality' of the transfer agreement reflects a transfer of all substantial rights in the asserted patents to Lone Star . . . We conclude that it does not."). In a licensee suit, a Rule 19 analysis of joinder of the missing patent owner may be appropriate. *Id.* at 1236. Importantly, the *Lone Star* court specifically addressed and distinguished the situation where a suit is brought by one patent co-owner without the other co-owner; in such a situation, Rule 19 is inapplicable, and the case should be dismissed. *Id.* at 1237 n.7. Accordingly, *Lone Star* supports granting Sunvilla's Motion to Dismiss.

The remaining cases cited by Atleisure are either similarly irrelevant to this case, or directly conflict with established Federal Circuit law. Like in *Lone Star*, the case of *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, involved a standing challenge in a suit brought by a patent **licensee** without joinder by the patent owner/licensor. *Dainippon*, 142 F.3d 1266, 1267 (Fed. Cir. 1998) ("CFM assigned all of its patents to CFMT, and CFMT granted back to CFM exclusive licenses to those patents."). The *Dainippon* court's application of a Rule 19 analysis was entirely consistent with *Ethicon* and its progeny because

11

*Dainippon* involved a missing patent **licensor** (just as in *Lone Star*) and did **not** involve suit by one of multiple patent co-owners (which is the case here, as in *Ethicon* and its progeny). Thus, *Dainippon* is also irrelevant to Sunvilla's Motion.

Atleisure also relies on *SourceOne Glob. Ptnrs., LLC v. KGK Synergize, Inc.,* 2009 U.S. Dist. LEXIS 56061 (N.D. Ill. June 29, 2009) and *Synopsys, Inc. v. Magma Design Automation, Inc.,* 2006 U.S. Dist. LEXIS 21662 (N.D. Cal. Mar. 30, 2006). Assuming *arguendo* that these unpublished and non-binding cases support application of a Rule 19 analysis for an absent patent co-owner, they appear to directly conflict with the Federal Circuit's published decisions in *Advanced Video Techs., STC.UNM, Enovsys, SiRF Tech., DDB Techs., Israel Bio–Eng'g Project,* and *Ethicon,* including the denial of rehearing *en banc* in *STC.UNM* where the patent owner made a similar argument.[3]

## III.        Rule 19 Analysis also Requires Dismissal

Finally, even if one were to ignore Federal Circuit precedent and conduct an analysis under FED. R. CIV. P. 19, the same conclusion is reached in this case: dismissal of Atleisure's lawsuit for lack of standing due to the absence of

---

[3] One of the very few cases even mentioning *Synopsys* – the opinion in *Bushnell, Inc. v. Brunton Company*, 659 F. Supp. 2d 1150, 1163 (D. Kan. 2009) – explicitly rejected the patent owner's invitation to apply Rule 19 to a missing patent co-owner fact situation.

the '492 patent's co-owner.

Rule 19 recites a two-part test for determining whether a party is "indispensable" to the suit. First, the court considers whether the absent party claims an interest relating to the action that may be impaired if the absent party is not joined. *Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1316-1317 (11th Cir. 2017). This first part of the test is easily met here because the '492 patent co-owner's rights may be impaired by the outcome of this litigation. For example, if the '492 patent is held invalid, the co-owner's interest in and to the '492 patent would be diminished (effectively becoming worthless). As a second example, a construction by this Court of a claim term in the '492 patent might well negate, impair, and/or reduce the value of the co-owner's interest, not to mention may affect which infringers the co-owner might choose to sue.

Under the second part of the Rule 19 analysis, the Court must consider whether the missing party is "traditionally labeled 'indispensable' under the common law." *Id.* at 1317. If the absent party should be joined, but cannot be joined, then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue or should "in equity and good conscience" be dismissed. Consideration of the various Rule 19 factors supports

dismissal.[4]

Factor 1 (prejudice to the absent person or an existing party) and Factor 3 (adequacy of judgment) plainly weigh in favor of dismissal. Continuation of this suit by Atleisure prejudices the absent co-owner at least because of the risk of invalidating or narrowing the '492 patent's claims. The prejudice to Sunvilla is even greater. For example, a judgment of noninfringement in favor of Sunvilla might well be contested by the absent patent co-owner in a subsequent suit. The absent co-owner would likely also dispute any favorable claim construction Sunvilla obtained in this suit, possibly requiring Sunvilla to relitigate all the issues in the present case. And in the unlikely event that Atleisure were to prevail in this litigation, the '492 patent co-owner might well bring a second suit against Sunvilla seeking additional damages and a double recovery for the same alleged infringement.

Factor 4 also favors granting of Sunvilla's Motion because Atleisure's rights are not rendered meaningless by dismissal. For example, on information

---

[4] The factors to be considered are: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the other parties; (2) the extent to which any prejudice could be lessened or avoided by "protective provisions in the judgment," "shaping the relief," or "other measures"; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed. *Thermoset Corp. v. Bldg. Mat'ls Corp. of Am.*, 849 F.3d 1313, 1319 (11th Cir. 2017).

and belief, Atleisure is actively seeking to disqualify numerous umbrella vendors selling on Amazon by alleging infringement the '492 patent. Atleisure is also still fully capable of granting licenses to the '492 patent. *Cf. STC.UNM,* 754 F.3d at 946-47 ("STC cannot enforce the '998 patent in court [due to an absent co-owner]. STC is certainly still free to enjoy all the rights a co-owner enjoys, such as commercializing or exploiting the '998 patent through licensing without consent of the other coowners."). Finally, Atleisure is fully capable of identifying, locating, and contacting the '492 patent co-owner to purchase those rights back or otherwise convince the co-owner to join suit. Dismissal of this case in no way renders Atleisure's co-ownership rights in the '492 patent meaningless.

## IV.    Conclusion

A plaintiff bears the burden of establishing that it has the right to bring a patent infringement suit. *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005). Because Atleisure has failed to carry this burden, Sunvilla respectfully requests that the Court grant its Motion and dismiss this case.

Respectfully submitted this 3rd day of March 2021.

/s/ Walter Hill Levie III__
Walter Hill Levie III
Georgia Bar No. 415569
Stephen M. Schaetzel
Georgia Bar No. 628653
tlevie@mcciplaw.com
sschaetzel@mcciplaw.com
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700
Facsimile: (404) 645-7707

Steven Malin (admitted *pro hac vice*)
Texas Bar No. 12859750
steve@malinlawfirm.com
LAW OFFICE OF STEVEN MALIN, PLLC
1400 Preston Rd, Suite 400
Plano, TX 75093
Telephone: (214) 800-5117

*Attorneys for Defendant Sunvilla Corporation*

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing complies with the font and point selections approved by the Court in L.R. 5.1B. The foregoing pleading was prepared on a computer using 13-point Century Schoolbook font.

<u>/s/ Walter Hill Levie III</u>
Walter Hill Levie III

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on March 3, 2021, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.

<u>/s/ Walter Hill Levie III</u>
Walter Hill Levie III