IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ATLEISURE, LLC,

    Plaintiff,

        v.

                           CIVIL ACTION FILE
                           NO. 1:20-CV-4662-TWT

SUNVILLA CORPORATION,

    Defendant.

## OPINION AND ORDER

This is a patent infringement case. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 39]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 39] is DENIED.

## I.  Background

The Plaintiff, ATLeisure, LLC ("ATLeisure"), designs, manufactures, and sells outdoor furniture, firepits, and umbrellas. (Compl. ¶ 7.) The Plaintiff owns several patents and trademarks for its products. (*Id.* ¶ 16.) One patent claimed by the Plaintiff is U.S. Patent No. 8,104,492 ("the '492 Patent"), which describes a design for an outdoor umbrella. (*Id.* ¶ 1.) The Plaintiff alleges it "has exclusive rights in the '492 Patent, including the right to use and enforce the patent." (*Id.* ¶ 18.) The Defendant, Sunvilla Corporation ("Sunvilla"), is one of the Plaintiff's direct competitors. (*Id.* ¶ 11.) The Plaintiff alleges that the

Defendant manufactures and sells various outdoor umbrellas that infringe upon the '492 Patent. (*Id.* ¶ 1.) The Plaintiff further alleges that the Defendant and two of its customers, Costco and Home Depot, "infringe at least Claim 1 of the '492 Patent." (*Id.* ¶ 26.) The Plaintiff brings claims for direct and induced infringement. (*Id.* ¶¶ 28–44.)

As a threshold issue to the Plaintiff's patent claims, the Parties dispute whether the Plaintiff has satisfied the statutory preconditions to bring this suit. The Defendant argues that the Plaintiff is merely a co-owner of the '492 Patent and thus must join its alleged co-owner, Yada Technology Group Company ("Yada"), in this suit. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 1.) The Defendant claims that a trio of documents "unequivocally provided to Yada and ATLeisure co-ownership of the '492 [P]atent." (*Id.* at 2.) In response, the Plaintiff argues that the Defendant's argument "relies on the convoluted nature of the transaction and ambiguity in some of the transactional documents to weave a theory of co-ownership, notwithstanding the clear intent of the parties to the contrary." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 2.) In support, the Plaintiff highlights an additional document that indicated the final result of the transaction was the '492 Patent "being assigned to and owned solely by [the Plaintiff]." (*Id.* at 6.) The Defendant raised similar arguments in its earlier Motion to Dismiss. However, in its May 5, 2021 Order, the Court denied the Defendant's Motion for relying upon documents outside the pleadings. *See ATLeisure, LLC v. Sunvilla Corp.*, Civ. A. No. 1:20-

2

cv-4662, 2021 WL 2449855, at *4 (N.D. Ga. May 5, 2021). The Court noted that the Parties should "address the question of ownership of the patent at the summary judgment stage," and this Motion followed. *Id.*

## II.   Legal Standards

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.   Discussion

The central issue before the Court is whether the Plaintiff is a co-owner of the '492 Patent and therefore must join Yada in its infringement suit. This is not a mere procedural footnote—the Parties indicate that Yada has undergone bankruptcy proceedings in China, leaving its legal status and its ownership of assets in dispute. (*See* Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 16–18; Def.'s Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 6–7.) Thus,

T:\ORDERS\20\ATLeisure, LLC\msjtwt.docx

if Yada is deemed a co-owner, ATLeisure will have to seek the voluntary joinder of either a bankrupt Chinese company or its successor in interest. Such a ruling might functionally prevent the Plaintiff from pursuing its infringement claims. On the other hand, if the Plaintiff is deemed the sole owner of the '492 Patent, its claims can proceed, and the Defendant's Motion for Summary Judgment will be denied. With this background in mind, the Court must determine the ownership of the '492 Patent by evaluating the Patent's chain of title from its inventor to its current owner or owners.

The Court begins with the undisputed details of the '492 Patent's past ownership. The Parties agree that Wu Weidan is the named inventor of the '492 Patent. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 3.)[1] Wu Weidan assigned the '492 Patent Application to Southern Sales and Marketing Group, Inc. ("SSMG"). (*Id.*) The '492 Patent ultimately issued on January 31, 2012. (*Id.*) Before its issuance, on September 13, 2011, SSMG entered into an Asset Purchase Agreement ("the APA") with Yada and the Plaintiff, which was then known as Southern Casual Living, LLC. (*Id.* ¶¶ 1, 4.) As the signature block of the APA indicates, Wu Weidan served as the President of Yada and the Chairman of the Board of the Plaintiff at the time of the agreement. (Def.'s Mot. for Summ. J., Ex. 1, at 44.) Among

---

[1] The Court notes that the record includes several spellings of Wu Weidan's name. The Court has elected to use the spelling that appears under his signature in the Asset Purchase Agreement. (*See* Def.'s Mot. for Summ. J., Ex. 1, at 44.)

4

the assets included in the APA was the '492 Patent. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 5.) In accordance with the APA, the parties to the APA executed a Patent and Trademark License Agreement ("the License"). (*Id.* ¶ 8.) The License granted both Yada and ATLeisure an option to purchase SSMG's intellectual property for $1 and a temporary license to the intellectual property that would expire upon exercise of the option. (*Id.* ¶ 9.)

What follows is the core of the Parties' dispute. Several months later, on May 24, 2012, the parties to the APA executed an Assignment of Intellectual Property ("the IP Assignment"). (Def.'s Mot. for Summ. J., Ex. 5.) On the same day, SSMG and ATLeisure executed an Assignment of Patents ("the Patent Assignment"). (Browne Decl., Ex. 4 [Doc. 20-5].) Both of these documents appear to transfer the rights to the '492 Patent. The IP Assignment lists SSMG and its president, Kenneth Harbaugh, as "the Assignors," and Yada and ATLeisure as "the Assignees." (Def.'s Mot. for Summ. J., Ex. 5, at 1.) The IP Assignment goes on to state that:

> Assignors hereby assign, convey and transfer[] to Assignees, all of Assignors' right, title and interest, throughout the world, in and to the following: . . .
>   (b) the patents and patent applications set forth on Schedule A attached hereto ("the Transferred Patents")[.]

(*Id.* at 2.) Schedule A of the IP Assignment appears to only include trademarks. (*Id.* at 7.) However, Schedule B lists the "Transferred Patents" and includes the '492 Patent. (*Id.* at 8.) As for the Patent Assignment, the document reads

5

in its entirety:

> For ten dollars and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, KENNETH A. HARBAUGH and SOUTHERN SALES AND MARKETING GROUP, INC., a Georgia corporation, each assigns all its right, title and interest in each of the Patents listed in Schedule A to ATLeisure, LLC, a Delaware limited liability company, as of May 24, 2012.

(Browne Decl., Ex. 4.) Schedule A of the Patent Assignment also includes the '492 Patent. Thus, the '492 Patent was referenced in two separate Assignments executed on the same day: under the IP Assignment, Yada and ATLeisure became co-owners; and under the Patent Assignment, ATLeisure became the sole owner. These two companies were not unrelated competitors in the umbrella and lawn furniture space: at the time of the IP and Patent Assignments, Yada was the parent company of ATLeisure. (Pl.'s Statement of Additional Fact in Opp'n to Def.'s Mot. for Summ. J. ¶ 5.)[2]

In its Motion, the Defendant argues that the APA, the License, and the IP Assignment together indicate "a multimillion-dollar business deal in which the '492 [P]atent was intended to be, and was in fact, assigned to Yada and

---

[2] In responding to the Plaintiff's Statement of Additional Facts, the Defendant repeatedly disputes facts reliant upon the Browne Declaration, arguing that the declaration is inadmissible in its entirety because "it is based on hearsay (what other parties said), speculation (what other parties thought), and violates the parol evidence rule (testimony varying the terms of a written instrument)." (*See, e.g.*, Def.'s Response to Pl.'s Statement of Additional Facts ¶ 5.) This repeated defense does not respond to the specific fact offered by the Plaintiff, and Browne's statement that Yada owned the company of which he served as President does not rely on hearsay, speculation, or parol evidence. As a result, this fact is admitted.

T:\ORDERS\20\ATLeisure, LLC\msjtwt.docx

ATLeisure as co-owners." (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 4.) Because three of the four relevant transaction documents indicate co-ownership and these documents were executed over the course of eight months, the Defendant claims that a "consistent and logical structure of the underlying business transaction" shows that both Yada and ATLeisure own the '492 Patent. (*Id.* at 12–14.) In its response, the Plaintiff relies heavily on the Patent Assignment, arguing that the contracts are clearly in conflict and the resulting ambiguity must be resolved with parol evidence. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 7.) The Plaintiff acknowledges that the agreements "were convoluted and perhaps . . . inartful," but that the specifics of the transaction and the relationships among the relevant parties indicate an intention to make the Plaintiff the sole owner of the '492 Patent. (*Id.* at 9–10.) In it Reply, the Defendant again raises its concerns that failure to recognize Yada as a co-owner here would subject it to a "multiplicity of suits" in conflict with Federal Circuit law. (Def.'s Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 1–2.)

The Defendant correctly notes that "[o]ther than the one-page [Patent Assignment,] . . . the evidence undisputedly and consistently points to an outcome of joint ownership." (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 4.) Indeed, if this case came before the Court on only the APA, the License, and the IP Assignment, it would be clear that Yada and ATLeisure were co-owners of the '492 Patent. However, the Court is not free to ignore the effect of the Patent Assignment. As referenced above, the Patent Assignment makes clear

7

that the '492 Patent, in direct conflict with the IP Assignment executed on the same day, was assigned solely to the Plaintiff. Under Georgia law, documents executed on the same day are deemed contemporaneous agreements and therefore must be considered together "in an effort to derive their intended meaning." *C.L.D.F. Inc. v. Aramore, LLC*, 290 Ga. App. 271, 273 (2008); *see also Wells Fargo Bank, N.A. v. Mitchell's Park, LLC*, 615 F. App'x 561, 564 (11th Cir. 2015) ("Because the Note and the Guaranty were executed on the same day, we must—as a matter of Georgia contract law—consider both documents together in determining the parties' intended meaning."); O.C.G.A. § 24-6-3(a) ("All contemporaneous writings shall be admissible to explain each other.").[3] Because of the conflict between these two documents when read as one, the Court finds that a patent ambiguity exists in the Parties' agreements. In Georgia, such ambiguities are resolved with the assistance of parol evidence. *See Southern Airways Co. v. DeKalb Cty.*, 102 Ga. App. 850, 859 (1960) ("Parol evidence, together with all the attendant and surrounding circumstances, may be proved to explain an ambiguity, latent or patent, in a contract."); *see also* O.C.G.A. §§ 24-3-3(b), 24-3-4. Further, "[a]lthough an ambiguity exists in the [contract] . . . , it does not automatically follow that a jury must resolve the issue." *H&E Innovation, LLC v. Shinhan Bank Am., Inc.*, 343 Ga. App. 881,

---

[3] The Parties agree that Georgia law applies to the contract issues in this case. (*See* Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 7; Def.'s Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 12–13.)

886 (2017). "Rather, it is only when the ambiguity remains after applying the rules of construction that a jury must resolve the issue of what the ambiguous language means." *Shepherd v. Greer, Klosic & Daugherty*, 325 Ga. App. 188, 192 (2013).

Applying Georgia rules of construction in light of the parol evidence and surrounding circumstances, the Court finds that the intent of the Parties was to assign the '492 Patent solely to the Plaintiff. Several findings undergird this conclusion. First, the mere existence of the Patent Assignment is powerful evidence of the contracting parties' intention to assign the '492 Patent solely to ATLeisure. If the intent behind the IP Assignment was to give both Yada and ATLeisure co-ownership of the listed patents, there would be no reason to enter into the Patent Assignment. Georgia law requires the Court to construe these documents "in a manner that does not render any of its language meaningless or mere surplusage." *H&E Innovation, LLC*, 343 Ga. App. at 886. A finding that the "Transferred Patents," including the '492 Patent, were conveyed to both ATLeisure and Yada in the IP Assignment would render the entirety of the Patent Assignment meaningless. To avoid such a result and give the Patent Assignment meaning, Georgia's rules of construction suggest that the Plaintiff has sole ownership of the '492 Patent.

Second, the parol evidence also supports the Plaintiff's sole ownership claim. As indicated by the agreements and the original Letter of Intent between the contracting parties, this transaction had some unusual

characteristics. For example, even though SSMG was selling its assets, the APA required the company to put $2 million into an escrow account with $1.5 million to be paid to Yada "and applied against the disputed accounts payable balance to Yada by [SSMG]" and the remainder to return to SSMG. (Def.'s Mot. for Summ. J., Ex. 1, at 14.) Clearly, this transaction involved more than just the transfer of intellectual property. The Defendant relies on "the plain language of multiple written instruments," but does not engage with the complexities—and occasional errors—present in the documents. (Def.'s Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 2.) On the other hand, the Plaintiff acknowledges these "inconsistencies and curious provisions," arguing instead that these errors undercut the language the Defendant casts as plain. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 9.) The Plaintiff's description—that these agreements "were convoluted and perhaps attempted to globally address issues present among certain parties in an inartful manner"—seems an apt description of these documents. (*Id.* at 9.) The inartful nature of these documents is made more apparent when compared to the original Letter of Intent between the contracting parties, which clearly identifies the Plaintiff alone as "the Buyer" of SSMG's "lawn and garden umbrellas business[.]" (Browne Decl., Ex. 1, at 1.) In contrast, Yada is merely referred to as "Yada," or occasionally as one half of the "Buying Parties" when referred to in conjunction with ATLeisure. (*Id.* at 1–2.) While this "Buying Parties" label is used in certain circumstances common to both companies, such as a release of

10

claims and demands against SSMG, only the Plaintiff is referred to in the context of purchasing and operating the business. (*Id.* at 2.) For example, in the Letter of Intent's "Representation and Warranties" section, the Letter clearly states:

> The Seller will deliver to Buyer, free and clear of all liens and encumbrances, all tangible and intangible assets necessary to operate the Business of the Seller as a going concern in the normal course.

(*Id.* at 3.) The Letter of Intent's relative clarity and its identification of the Plaintiff alone as "the Buyer" serves as useful parol evidence supporting the Plaintiff's contention that the Parties originally intended its sole ownership of the '492 Patent.

Finally, the surrounding circumstances also suggest the Plaintiff's sole ownership. In particular, the Plaintiff alone recorded the assignment with the United States Patent and Trademark Office ("USPTO"). (Pl.'s Statement of Additional Facts ¶ 14.)[4] While "[t]he recording of an assignment with the [USPTO] is not a determination as to the validity of the assignment[,]" the

---

[4] The Defendant raises several arguments against this fact. (Def.'s Response to Pl.'s Statement of Additional Facts ¶ 14.) First, the Defendant makes a legal argument against evaluating this evidence. Argumentative legal responses are not recognized in this context. *See* N.D. Ga. Local R. 56.1(B)(2)(a)(1). Second, the Defendant argues again that the evidence relied upon for this fact rests on hearsay, speculation, and parol evidence. Mr. Browne's knowledge that his company recorded a patent assignment with the USPTO does not rest on hearsay, speculation, or parol evidence. Finally, the Defendant argues that the fact relates to a discussion with Wu Weidan to describe the parties' intent. The Court will deem this fact admitted only as to the fact that the USPTO recorded the patent assignment to the Plaintiff alone.

11

Federal Circuit has noted that such an assignment "creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327–28 (Fed. Cir. 2010). Thus, while the assignment does not confirm the assignment's validity, the Plaintiff's recording of the assignment with the USPTO can provide some insight as to its contemporaneous understanding of the transfer. This evidence weighs in favor of the Plaintiff's claim of sole ownership.

Thus, Georgia's rules of construction, the available parol evidence, and the surrounding circumstances indicate that the original intention behind these transactions was to give the Plaintiff sole ownership of the '492 Patent. As a result, the Plaintiff has satisfied the statutory preconditions for bringing its infringement suit, and the Defendant's Motion for Summary Judgment is denied.

As a final note, the Defendant repeatedly raises its fear of multiple infringement suits and argues that the Plaintiff's ownership should not be determined without Yada as part of these proceedings. (*See, e.g.*, Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 17.) The Defendant argues that if the Plaintiff is allowed to pursue its infringement claims, it "will suffer prejudice no matter who wins[:]" if Sunvilla beats the Plaintiff's infringement claims, it argues Yada or its successor in interest will bring a separate claim on the same facts; and if it is found liable for infringement, the Defendant believes it will

face a second suit seeking a double recovery. (*Id.* at 17–18.) In the Defendant's view, "the only way [for Sunvilla] to have certainty and a lasting peace" is for the Plaintiff to settle its ownership of the '492 Patent through a separate suit against Yada or its successor in interest. (*Id.*) However, the Court cannot concern itself with how a different court might apply collateral estoppel principles in a hypothetical future suit. Instead, the Court is limited to the record and issues before it, and on that record, the Court has determined that the Plaintiff is the sole owner of the '492 Patent.[5]

## IV.   Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 39] is DENIED.

SO ORDERED, this 5 day of October, 2021.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[5] The Defendant cites several Federal Circuit cases outlining a general principle that these statutory preconditions for filing suit exist to protect infringement defendants from a multiplicity of suits. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 18–19.) However, the Federal Circuit cases cited by the Defendant are obviousness-type double patenting cases, an issue neither side argues is present here. Indeed, the Federal Circuit has noted that it "see[s] no reason to import into this judicially-created doctrine the entirety of our body of law analyzing who is a statutory 'patentee' pursuant to 35 U.S.C. § 281." *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1059 (Fed. Cir. 2020). These cases are therefore distinguishable, and this argument does not change the Court's analysis.

13

T:\ORDERS\20\ATLeisure, LLC\msjtwt.docx